UNITED STATES DISTRICT COURT FILED
DISTRICT OF CONNECTICUT

2005 OCT 26  P 12: 38

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| v | : | 3:00 CR 227 (SRU) |
| HECTOR GONZALEZ | : | OCTOBER 25, 2005 |

U.S. DISTRICT COURT

### MEMORANDUM OF LAW IN SUPPORT OF THE DEFENDANT'S RESENTENCING

**Facts of the Case:**

1. On December 3, 2003, the above defendant was sentenced to 396 months following his plea of guilty to Count Twelve of the Third Superseding Indictment which charged Conspiracy to Possess with Intent to Distribute 1,000 Grams or More of Heroin, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A), and 841(a)(1). This sentence was imposed concurrently with a sentence the defendant was then serving of 87 months imposed on April 9, 1998, in the Federal District Court for the Eastern District of New York on a related case. The sentence was to be reduced by the amount of time the defendant had been imprisoned on that related case prior to December 3, 2003.

2. The defendant thereafter appealed this sentence to the United States Court of Appeals for the Second Circuit and that Court subsequently remanded the case to the District Court "for further proceedings in conformity with Crosby." That Court also stated the following in its order of remand:

> Although we do not pass on the merits of the claim, the district court is instructed to consider in the first instance Gonzalez' claim that he should have been granted a downward departure or adjustment, as opposed to "credit," for the discharged portion of his sentence in his related case.

1. **THE DEFENDANT HAS NOT RECEIVED THE CREDIT AGAINST HIS SENTENCE ORDERED BY THE COURT FOR THE DISCHARGED PORTION**

-1-

**OF HIS SENTENCE IN THE RELATED CASE.**

**Facts relevant to this claim:**

The transcript of the defendant's sentencing hearing reflects it was the intention of the Court to give the defendant a credit against the sentence it imposed for the time that the defendant had been imprisoned on the related New York conviction. The Court stated the following:

> It is my intention to sentence you as follows:
>
> To a period of 396 months of incarceration, from which you should be credited with time served from June 12th ,1988, which is approximately 65 months, which leaves, therefore approximately 331 months on your sentence to serve. This sentence will be concurrent with the sentence you are currently serving in New York from this point forward.

(See Appendix A, sentencing transcript, p.74 )

The judgement in this case also reflects that the defendant was to receive this credit.

(See Appendix B, Judgement )

The defendant has not received that credit.

(See Appendix C, Defendant's BOP records)

The undersigned has computed the time between the defendant's sentencing date in New York of April 9, 1988, and his sentencing date in this Court to be 67 months and 14 days. In addition, the BOP records appear to reflect an additional amount of time that should be added to this sum for pre-trial credit the defendant received while in pre-trial confinement awaiting sentencing.

2.  **THE COURT'S FINDINGS OF CERTAIN ENHANCEMENTS BASED UPON FACTS WHICH THE DEFENDANT DID NOT ADMIT VIOLATED THE DEFENDANT'S SIXTH AMENDMENT RIGHTS.**

**Facts relevant to this claim:**

At the time of the defendant's sentencing, neither the Booker[1] holding nor the Crosby[2] holding had been decided. At the defendant's sentencing hearing the Court made three findings that increased the defendant's base offense level by 9 points resulting in an increase in the defendant's base offense level from 32 to 41. These findings were made by the Court and were not admitted by the defendant.

The first finding made by the Court was that the evidence was sufficient to establish that the defendant possessed with intent to sell a quantity of crack cocaine and found this to be "relevant conduct" which enhanced his base offense level from 32 to 38. This conduct was alleged in the indictment (Count 13) but was never admitted by the defendant; never mentioned in his plea agreement (See Appendix D, Plea Agreement); and was subsequently dismissed following his sentencing on Count 12.

The second enhancement was based upon a finding by the Court that there was sufficient evidence to establish that it was reasonably foreseeable to the defendant that his co-conspirators would possess firearms in the commission of the offense to which he had pled guilty, resulting in a two point enhancement of his base offense level to 40.

The final enhancement the Court found warranted by the facts was that the defendant was an "organizer or leader" in the offense rather than having played a "supervisory role", a status agreed upon by the defendant. This resulted in a four-point enhancement to his base offense level rather that a three-level enhancement and

---

[1] United States v. Booker, 543 U.S. _____, 125 S. Ct. 738 (2005)

[2] United States v. Crosby, 397 F. 3d 103 (2d Cir. 2005)

added another point to his base offense level to 41.

**Argument:**

A review of the transcript of the sentencing hearing reflects that the standard of proof used by the Court in finding these enhancements varied. As to the enhancement for "relevant conduct" the Court stated the following:

> . . . .there is <u>overwhelming evidence</u> of at least 30 kilograms of heroin during the period of time that Mr. Gonzalez was involved with the conspiracy, and there is also <u>overwhelming evidence</u> that the coconspirators distributed far in excess of one and -a-half grams of crack cocaine. There is, in my view, and you can try to convince me otherwise but there's <u>very little doubt in my mind</u>, knowing what I know from these prior trials, that Mr. Gonzalez was aware of the scope of the conspiracy that he had joined, that he was in fact, if not an equal partner, very close to being an equal partner with Frank Estrada, at least in the early days of their union, that he at all times was heavily involved in the conspiracy and was obviously aware that there were very large quantities of heroin and cocaine being distributed by members of the organization. . . . I believe the government's position concerning the appropriateness of including the crack sales as relevant conduct appears to be the correct view.

(Appendix A, Sentencing Transcript, pp.54-5)

Subsequently the Court stated the following as to this enhancement:

> . . . but I think that on the quantity issue and the base offense level issue, <u>the evidence I think is overwhelming</u>. The PSR I think accurately states that this conspiracy was one that generated an estimated 26 kilograms of heroin per year beginning in 1996, so there were a good two and -a-half years there when Mr. Gonzalez was involved and that's just the heroin alone. The crack was, <u>as is shown by the facts of the New York case</u>, which I agree is related, he was down in New York buying 125 thousand dollars worth of cocaine and that's a huge quantity from that event alone which is relevant conduct, and I think the relevant conduct is appropriately - - appropriately includes the crack cocaine.
> So I'm going to overrule the objection and confirm the base offense level as a 38 based upon the quantity both of heroin and crack cocaine, either one of which by itself would be sufficient to have 38 level.

(Appendix A, Sentencing Transcript, p.58)

As to the standard used by the Court for the firearm enhancement the Court found the following:

> THE COURT: All right. Well, again I'm happy to hear from Mr. Filan but my distinct recollection of the evidence in these trials is that there was some evidence that Mr. Gonzales possessed weapons himself but there was <u>overwhelming evidence</u> that persons close to him, including William Rodriquez who was generally described as the enforcer for the Estrada organization, not only possessed weapons but used them, and it's frankly inconceivable to me based upon my recollection of the relationship between Mr. Gonzalez and William Rodriquez that it was not foreseeable to Mr. Gonzalez that weapons were not only possessed but actually used to further the aims of the conspiracy that he joined. And, accordingly, I'm going to award a two point enhancement for firearms.

(Appendix A, Sentencing Transcript, pp.59-60)

On the finding that the defendant was "an organizer or leader" in the criminal activity, rather than a supervisor the Court found as follows:

> THE COURT: I believe a four level enhancement is the appropriate enhancement here. Mr. Gonzalez was in fact an organizer or leader of a criminal activity that involved five or more participants and certainly was very extensive. I don't understand 3b1.1a to be limited to a single person within any criminal organization and I think because Mr. Gonzalez, <u>the evidence certainly shows</u> was an organizer or a leader of that criminal activity and, in fact, many of the people who have been described as lieutenants were subordinate to Mr. Gonzalez, I believe it's appropriate that he receive a four level enhancement under 3b1.1.

(Appendix A, Sentencing Transcript, p. 63)

It is clear that the Court made its findings on these enhancements contrary to the requirements of <u>Booker</u> and <u>Crosby</u>. For this reason a resentencing of the defendant is required. In addition to conforming to the dictates of these cases the defendant submits that the Court reconsider separately at such resentencing hearing the use by the Court of the defendant's transactions in crack cocaine in New York as relevant conduct.

1. **The enhancement for relevant conduct, based in part upon the defendant's purchase of a substantial amount of cocaine in New York for re-sale by the Estrada organization in Connecticut, was contrary to the plea agreement in this case and the defendant's, reasonable belief that his actions in New York which resulted in his conviction there would not be used to enhance his sentence.**

The enhancement for relevant conduct involved a finding that the defendant had possessed cocaine with the intent to sell in addition to possession of heroin with the intent to sell to which he had pled guilty. The Court found that the evidence as to the quantity of cocaine purchased by the defendant in New York for the Estrada organization was "overwhelming", in that the price of the cocaine purchased by the defendant in that transaction was $125,000.

The defendant submits that the Court erred in using the defendant's conduct in New York on behalf of the Estrada organization as relevant conduct to enhance his base offense level from 32 to 38. First, because the plea agreement was limited to a plea to Count 12 of the indictment, which covered only heroin. Second, the government, in its plea agreement with the defendant agreed to dismiss Count 13, which covered the possession of cocaine with intent to sell. Such an agreement by the government would lead any reasonable person to believe that the defendant's actions in New York would not be used to enhance his sentence.

Of particular relevance for reconsideration of this enhancement however, is the plea agreement entered into by the defendant with the government in which the government agreed that the sentence the defendant received in New York for this activity should be credited against his Connecticut sentence. (See, Appendix D, Plea Agreement) Contrary to this agreement, however, the government at the sentencing

-6-

hearing urged the Court to enhance his Connecticut sentence by treating his purchase of cocaine in New York as relevant conduct. What the government gave in its plea agreement it took back at his sentencing hearing by urging that the very conduct it had agreed should reduce the defendant's sentence be used to increase that sentence. The defendant submits that such conduct was improper, and urges the Court to recognize this by reducing the defendant's enhancement for relevant conduct.

**Conclusion:**

For the foregoing reasons the defendant moves that this Court resentence the defendant to a term of imprisonment reduced by the prison time that the defendant had served on his New York sentence and that this Court reconsider the enhancements used to increase his base offense consistent with the findings in Booker and Crosby.

Respectfully submitted,
HECTOR GONZALES

By: _____
Donald D. Dakers
His Attorney
ct13257
18 Pepperidge Lane
Madison, CT 06443
(Tel) (203)946-4811
(Fax) (203)498-1238

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing memorandum was mailed this 25th day of October 2005, to Alex V. Hernandez, A.U.S.A., United States Attorney's Office, Federal Building and U.S. Courthouse, 915 Lafayette Blvd. Rm #309, Bridgeport, CT 06604, and Alina P. Marquez, A.U.S.A., United States Attorney's Office, Federal Building and U.S. Courthouse, 915 Lafayette Blvd. Rm #309, Bridgeport, CT 06604.

Donald D. Dakers