UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

HECTOR GONZALEZ,
    Petitioner,

v.

UNITED STATES OF AMERICA,
    Respondent.

No. 3:09-cv-1790

## RULING ON MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE

Hector Gonzalez is currently confined at Federal Correctional Institution Ft. Dix in New Jersey.  He brings this action *pro se*, seeking a writ of habeas corpus, pursuant to 28 U.S.C. § 2255.  On June 18, 2003, Gonzalez entered a guilty plea to one count of a superseding indictment that charged him with conspiracy to distribute 1,000 grams or more of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A).  In his petition, Gonzalez principally argues that his counsel was ineffective at various stages of his case.  For the reasons that follow, Gonzalez's petition is granted in part and denied in part.

**I.**    **Background**

Gonzalez's conviction stems from his involvement in a large drug trafficking operation in and around the City of Bridgeport, Connecticut.  On June 20, 2001, a federal grand jury returned the third in a series of superseding indictments ("Connecticut Indictment") that charged Gonzalez and twenty-six other defendants with offenses related to that criminal enterprise.  *United States v. Estrada*, No. 3:00-cr-227 (SRU) (D. Conn. June 20, 2001) (doc. 473).  Counts twelve and thirteen charged Gonzalez with conspiracy to distribute 1,000 grams or more of heroin in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841 (b)(1)(A), and unlawfully conspiring to possess

with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A).  *Id.*

Prior to the Connecticut Indictment, on June 17, 1997, a grand jury in the Eastern District of New York charged Gonzalez and two co-defendants in a two-count indictment ("New York Indictment") with conspiracy to possess with intent to distribute cocaine and attempting to possess with intent to distribute cocaine.  *United States v. Gonzalez*, No. 1:97-cr-565 (DGT) (doc. 12).  Gonzalez pleaded guilty to both counts of the New York Indictment and was sentenced to a term of 87 months' imprisonment.  Change of Plea Hr'g, *United States v. Gonzalez*, No. 1:97-cr-565 (DGT) (E.D.N.Y. Nov. 13, 1997) (doc. 40); Judgment, *United States v. Gonzalez*, No. 1:97-cr-565 (DGT) (E.D.N.Y. Apr. 20, 1998) (doc. 46).

Based on his guilty plea in New York, Gonzalez filed a motion to dismiss the Connecticut Indictment on double jeopardy grounds (*Estrada*, docs. 806, 807).  On February 22, 2002, I denied that motion.  *United States v. Estrada*, 188 F. Supp. 2d 207 (D. Conn. 2002), *aff'd*, 320 F.3d 173 (2d Cir. 2003).

On June 18, 2003, Gonzalez pleaded guilty to Count Twelve of the Connecticut Indictment (*Estrada*, doc. 1224).  By the time Gonzalez made that decision, his counsel had become increasingly concerned that due to the large quantities of narcotics alleged in the indictment, the number of reputed co-conspirators that had come forward offering to cooperate with the government, and the abundance of evidence that the government had available that his client could face life imprisonment.  McCarthy Decl. ¶ 7.  With that in mind, counsel advised Gonzalez that he should consider accepting a plea agreement and pleading guilty.  *Id.* ¶¶ 7-10.

During the course of the plea negotiations, Gonzalez's counsel secured significant

concessions from the government.  His counsel successfully sought the dismissal of Count Thirteen and an agreement that whatever sentence Gonzalez received in the District of Connecticut, he would receive credit for the 87-month sentence imposed in the Eastern District of New York.  McCarthy Decl. ¶¶ 9-11.  Gonzalez's counsel was unable to secure a stipulation from the government for a narcotics amount that reflected less than the highest possible base offense level of 38, U.S.S.G. § 2D1.1(c)(1) (2002).  *Id.* ¶ 12.

The plea agreement provided, "[t]he defendant expressly understands that the Sentencing Guideline determinations will be made by the Court, based upon input from the defendant, the Government, and the United States Probation Officer who prepares the presentence investigation report."  Resp't's Ex., at 2 (*Gonzalez*, doc. 24) (Plea Agreement).  During Gonzalez's plea proceeding on June 18, 2003, I advised him that, "you're going to be giving up your right to have a jury decide questions that pertain to your punishment, including the quantity of drugs involved. . . . I'll be deciding rather than the jury . . . ."  Change of Plea Tr. 13:4-14:6 (doc. 1346).  I emphasized that one of the primary considerations in my calculation of the guideline range would be "the seriousness of the offense, and in this case that would depend in large part on the quantity of narcotics associated with your involvement."  *Id.* 27:17-27:24.  I also confirmed that Gonzalez and his counsel understood that any prediction that counsel made regarding Gonzalez's sentence under the guidelines did not bind me.  *Id.* 28:14-28:21.  Gonzalez then pleaded guilty to conspiring to possess with intent to distribute a thousand grams or more of heroin.  *Id.* 38:1-38:3.

On December 3, 2003, I sentenced Gonzalez to 396 months' imprisonment which, consistent with the plea agreement, was to run concurrently with the sentence imposed by the Eastern District of New York (*Estrada*, doc. 1276).  In reaching that sentence, I adopted the

factual statements set forth in the presentence report.  Sentencing Tr. 26:16-27:1 (*Estrada*, doc. 1289).  Based on those facts, my calculation of Gonzalez's offense level differed only slightly from the presentence report's calculation.  *Id.* 63:23-64:6.

At the sentencing hearing, Gonzalez's counsel argued that his client was entitled to a base offense level of 32.  *Id.* 55:16-57:23.  Based on what I determined was overwhelming evidence that during Gonzalez's involvement from 1996 through May 1998, the criminal network had distributed more than 30 kilograms of heroin, I ruled that the appropriate base offense level was 38.  *Id.* 57:24-58:18.  Over counsel's objections, I imposed a firearm enhancement under U.S.S.G. § 2D1.1(b)(1) and a four-level enhancement under U.S.S.G. § 3B1.1(a) for Gonzalez's role in the offense.  *Id.* 59:22-60:10, 63:8-63:19.  Despite Gonzalez's failure to acknowledge his 1988 conviction in Connecticut during the presentence investigation, I did not accept the Probation Office's recommendation to impose an enhancement for obstruction of justice.  *Id.* 42:3-42:21.  In light of Gonzalez's failure to acknowledge that prior conviction, however, I did not award Gonzalez the full three point deduction for acceptance of responsibility under U.S.S.G. § 3E1.1.  *Id.* 52:11-53:4.  As a result of those findings, Gonzalez had a total offense level of 42.  *Id.* 63:23-64:6.  With a criminal history category of II, Gonzalez's guidelines sentencing range was 360-months' to life imprisonment.  *Id.* 64:7-64:9; U.S.S.G. Sentencing Table (2002).

Gonzalez appealed his 396-month sentence, but before the parties could brief the direct appeal, the government moved to remand in light of the U.S. Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and the Second Circuit's decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).  On March 13, 2006, I held a resentencing hearing at which I imposed substantially the same sentence on Gonzalez, except that I reduced the sentence from

396 months to 309 months' imprisonment.  Resentencing Tr. 26:9-27:25 (*Estrada*, doc. 1481). Due to the Bureau of Prisons' failure to credit Gonzalez for the 87 months he had served for the sentence imposed in the Eastern District of New York, I adjusted his sentence to ensure that he received a sentence consistent with my ruling and the parties' plea agreement.  Judgment (D. Conn. Mar. 13, 2006) (*Estrada*, doc. 1464); Resentencing Tr. 25:23-26:8.

Gonzalez appealed, and the Second Circuit affirmed the sentence in a summary order on April 10, 2008.  *United States v. Gonzalez*, 272 F. App'x 134 (2d Cir. 2008), *cert. denied*, *Gonzalez v. United States*, No. 08-6611, 555 U.S. 1008 (2008).

On November 4, 2009, Gonzalez filed this petition seeking to vacate his conviction, primarily raising ineffective assistance of counsel claims.  Among his ineffective assistance claims, Gonzalez alleges that, in connection with the resentencing, his counsel failed to raise evidence of Gonzalez's post-sentencing rehabilitation efforts.  Pet.'r's Mem. in Supp. of Mot. 32-33.

II. **Standard of Review**

In order to support a claim for relief under 28 U.S.C. § 2255, a petitioner must establish that his "sentence was imposed in violation of the Constitution or Laws of the United States."  28 U.S.C. § 2255.  "As a general rule, 'relief is available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'"  *United States v. Napoli*, 32 F.3d 31, 35 (2d Cir. 1994) (quoting *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)).  The standard is a high one, and constitutional mistakes will not be fixed through a

writ of habeas corpus unless they have had a "substantial and injurious effect" that results in "actual prejudice." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).

**III.     Discussion**

The Sixth Amendment to the Constitution affords a right to effective assistance of counsel in criminal cases.[1]  *Strickland v. Washington*, 466 U.S. 668, 684 (1984).  In order to prevail on an ineffective-assistance-of-counsel claim, a defendant must show: (1) that his counsel's performance "fell below an objective standard of reasonableness," and (2) "that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687-88; *see also United States v. Jones*, 455 F.3d 134, 151 (2d Cir. 2006).  In addressing the adequacy of representation, courts "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Gonzalez advances four grounds for relief, including that his trial counsel failed to raise evidence of post-sentencing rehabilitation during Gonzalez's resentencing hearing.  This is the only ground which merits reconsideration of Gonzalez's sentence.  None of Gonzalez's other grounds for relief overcomes the high bar established in *Strickland*.

---

[1] Gonzalez is not barred from asserting his ineffective assistance of counsel claim even though his lawyer failed to raise it on appeal.  Although it is a general rule that a claim may not be asserted in a habeas petition unless it was raised on direct review, *Reed v. Farley*, 512 U.S. 339, 354 (1994), the procedural default rule does not apply to claims of ineffective assistance of counsel. *Massaro v. United States*, 538 U.S. 500, 505-06 (2003).

A.     Ineffective Assistance of Counsel at Sentencing

Gonzalez argues that I improperly determined that his base offense level was 38 and that his counsel provided ineffective assistance of counsel at sentencing by failing to advocate strenuously that his base offense level should have been 32.[2]  This claim is principally a dispute regarding the appropriate offense level under the U.S. Sentencing Guidelines ("Guidelines"), not a constitutional claim.  Gonzalez fully litigated his Guidelines dispute on direct appeal, and the dispute was decided on the merits.  Because section 2255 requires a showing of constitutional error, Gonzalez has failed to identify such error, and his claim of ineffective assistance at sentencing fails.

It is well established that a federal prisoner may not use section 2255 to relitigate questions that were already resolved during a direct appeal.  *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001); *Riascos-Prado v. United States*, 66 F.3d 30, 33 (2d Cir. 1995).  On direct appeal to the Second Circuit, Gonzalez argued that the sentence I imposed following the *Crosby* remand violated the terms of his plea agreement concerning drug quantity.  In his petition, Gonzalez argues that because he pleaded guilty to a charge of conspiracy to distribute 1,000 grams or more of heroin, I should have calculated his base offense level based on a narcotics quantity of no more than 2.99 kilograms of heroin.  That amount would have placed Gonzalez at a base offense level of 32.  U.S.S.G. § 2D1.1(c)(4).  The statutory sentencing range for an individual who pleads guilty to the crime of conspiracy to distribute 1,000 grams or more of

---

[2] It should be noted that Gonzalez's counsel argued strenuously for a base offense level of 32 during Gonzalez's original sentencing.  Sentencing Tr. 55:16-57:23 (D. Conn. Dec. 3, 2003) (*Estrada*, doc. 1289).  At his resentencing, Gonzalez's counsel raised the issue of base offense level, as well.  Resentencing Tr. 18:5-21:21 (D. Conn. Mar. 13, 2006) (*Estrada*, doc. 1481).

heroin is 10-years' to life imprisonment.  21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A).

Based on overwhelming evidence that Gonzalez was a substantial figure in a conspiracy that distributed more than 30 kilograms of heroin, I determined that his base offense level was 38.  *See United States v. Vaughn*, 430 F.3d 518, 525 (2d Cir. 2005) (holding that even after *Booker*, district courts have the authority to determine facts at sentencing by a preponderance of the evidence), *cert. denied*, No. 05-9499, 547 U.S. 1060 (2006).  At Gonzalez's sentencing hearing, and after consideration of other provisions in the Guidelines, I sentenced Gonzalez to 309 months' imprisonment, to run consecutively with his sentence from the Eastern District of New York.  That sentence was below the statutory maximum Gonzalez could have received as a result of his guilty plea, and it fell within the Guidelines range for his offense and criminal history levels.  As such, the sentence was consistent with Gonzalez's plea agreement, *Booker*, and the Sixth Amendment right to trial by jury.

At his change of plea hearing, I explained multiple times to Gonzalez that the government would not stipulate to a quantity other than the statutory threshold and that I would make a finding of fact on quantity based on the evidence available at the time of sentencing.  Gonzalez's plea agreement was clear that his offense was punishable by not less than ten years and up to lifetime imprisonment.  Resp't's Ex., at 2.  The agreement also provided that Gonzalez "expressly understands that the Sentencing Guideline determinations will be made by the Court, based upon input from the defendant, the Government, and the United States Probation Officer who prepares the presentence investigation report," and that Gonzalez "further understands that he has no right to withdraw his guilty plea if his sentence or the Guideline application is other than he anticipated."  *Id.*  Even so, Gonzalez's counsel at sentencing vigorously argued each

portion of the Guidelines calculation, Sentencing Tr. 27:15-64:23, and his counsel at resentencing also challenged the calculation and requested that the issue be preserved for appeal. Resentencing Tr. 20:3-21:21; *see also* Def.'s Sentencing Mem. (*Estrada*, doc. 1263); Def.'s Sentencing Mem. (*Estrada*, doc. 1418); Def.'s Supp. Mem. of Law (*Estrada*, doc. 1423). Those objections do not support a claim for ineffective assistance with respect to challenging Guidelines calculations at sentencing.

Given the clarity of the law, the plea agreement, and his prior direct appeal to the Second Circuit, Gonzalez has not identified a *constitutional* error in his sentencing. Instead, he seeks to relitigate his already-decided appeal regarding his Guidelines range. As a result, the foregoing ineffective assistance of counsel claim fails.

B.   Ineffective Assistance of Counsel at the Pre-plea and Plea Stages

Gonzalez argues that his counsel's failure to make clear the full consequences of not stipulating to a drug quantity in the plea agreement amounts to constitutionally ineffective assistance of counsel. Specifically, Gonzalez claims he was unaware that by pleading guilty to conspiracy to distribute 1,000 grams or more of heroin, I could make a factual finding on quantity as high as 30 kilograms of heroin. The transcript from Gonzalez's change of plea proceeding and his trial counsel's affidavit demonstrate that on numerous occasions Gonzalez was told that the government refused to stipulate to drug quantity, that the issue of drug quantity would be for the court to determine, and that he could potentially be found responsible for a quantity associated with a base level offense of 38.

A defendant's Sixth Amendment right to counsel extends to plea negotiations, but Gonzalez has not shown that his counsel's performance was outside the "wide range of

reasonable professional assistance" that the Constitution permits.  *Padilla v. Kentucky*, 559 U.S. 356, 364-65 (2010); *see also Missouri v. Frye*, No. 10-444, 132 S. Ct. 1399, 1406-07 (2012); *Iowa v. Tovar*, 541 U.S. 77, 81 (2004); *Strickland*, 466 U.S. at 684; *Davis v. Greiner*, 428 F.3d 81, 87 (2d Cir. 2005).  Moreover, even assuming Gonzalez's counsel's conduct fell short of what the Constitution requires, Gonzalez was not prejudiced.

In an affidavit, Gonzalez's counsel stated, "during negotiations, I repeatedly sought a stipulation regarding the offense conduct that would specify a particular narcotics quantity." McCarthy Decl. ¶ 9.  In a letter dated March 2, 2003, Gonzalez's counsel wrote to the government expressing his client's concern over reaching a stipulation to the offense conduct.  Gonzalez's counsel wrote, "[m]y client is very much preoccupied with the *Apprendi* decision, so perhaps a reasonable offense conduct stipulation could take these issues out of play, to the extent they apply."  That exchange suggests Gonzalez and his counsel had discussed the significance of a stipulation prior to entering into the plea agreement.  Indeed, Gonzalez's preoccupation with the issue reveals a defendant aware of what was at stake in the negotiations.  Furthermore, considering that Gonzalez was involved in one of the largest and most notorious drug conspiracies in Bridgeport's history, it is unlikely that counsel or Gonzalez himself would have believed his sentencing exposure was limited to the base level offense of 32, the lowest level possible for someone who pleads guilty to conspiracy to distribute 1000 grams or more of heroin.

To the extent Gonzalez ever had the impression that drug quantity was not something I could consider in calculating his Guidelines range, at the change of plea hearing, I cautioned: "should you plead guilty today, you're going to be giving up your right to have a jury decide questions that pertain to your punishment, including the quantity of the drugs involved."  Change

of Plea Tr. 13:4-14:6 (June 18, 2003) (*Estrada*, doc. 1346).  I told Gonzalez, "I have no idea of how you're going to be sentenced in this case sitting here today and neither does your lawyer or the prosecutor, and so that's going to depend upon a lot of factors and information that come to light. . . ."  *Id.* 20:1-20:5.  Gonzalez confirmed that he understood those warnings and the terms of the plea agreement, and that by pleading guilty he faced a maximum sentence of life in prison.  I went on to explain to Gonzalez how the Guidelines operate, underscoring that the two most important factors were the seriousness of the offense and past criminal history and that in his case the former "would depend in large part on the quantity of narcotics associated with [his] involvement."  *Id.* 27:17-27:24.  Gonzalez and his counsel indicated that they had discussed how the Guidelines might apply and their understandings regarding any predictions counsel might have made about sentencing exposure were not binding upon the court.  With that, Gonzalez listened to the elements of the charged offense and then pleaded guilty to conspiracy to possess with intent to distribute 1,000 grams or more of heroin.  *Id.* 37:21-38:3.

      Gonzalez's demonstrated comprehension of the issues at the change of plea hearing convinces me first, that counsel provided competent representation and second, that even if counsel had improperly advised Gonzalez about the consequences of a plea, no prejudice resulted.  For those reasons, Gonzalez's ineffective assistance of counsel claim regarding pre-plea and plea issues lacks merit.

      C.      <u>Ineffective Assistance of Counsel at the Resentencing Stage</u>

      Gonzalez advances several grounds for ineffective assistance of counsel relating to his *Crosby* resentencing hearing, including that his counsel failed to advocate for concurrent sentences and failed to provide evidence of post-conviction rehabilitation.

1. *Concurrent Sentences*

Gonzalez argues that his counsel's failure to seek a sentence that would run concurrently with the sentence imposed in the Eastern District of New York rendered representation at resentencing constitutionally ineffective. This argument is unavailing.

On remand from the Second Circuit following *Booker*, I held a resentencing hearing at which I imposed substantially the same sentence as I did at the first sentencing. Nevertheless, based on the Bureau of Prisons' failure to credit Gonzalez for the 87-month sentence imposed in the Eastern District of New York, as intended, I restructured Gonzalez's sentence to ensure that he would be appropriately credited for time served under the Eastern District of New York sentence. I reduced his sentence by 87 months and ordered that it run consecutively with the sentence in the Eastern District of New York. Gonzalez's counsel asked me to clarify if my sentence had the same substantive effect as it would have if Gonzalez had been serving both terms concurrently. Resentencing Tr. 10:8-11:8, 12:3-12:11. I explained that I reduced Gonzalez's sentence by 87 months to ensure that he would not suffer for the Bureau of Prisons' failure to accurately credit his sentences between the Eastern District of New York and the District of Connecticut. *Id.* 12:12-13:7, 13:24-14:17, 25:23-26:8. Accordingly, counsel's assistance was not constitutionally ineffective on the issue of concurrent sentences.

2. *Post-Conviction Rehabilitation*

Between Gonzalez's original sentencing and his resentencing hearing, the U.S. Supreme Court decided *Booker*, which held unconstitutional section 3742's bar on the consideration of post-conviction rehabilitative efforts in (re)sentencing. 543 U.S. at 242, 259; *Pepper v. United States*, No. 09-6822, 131 S. Ct. 1229, 1236 (2011); *United States v. Butler*, 501 F. App'x 8, 10

(2d Cir. 2012). Thereafter, the government moved the Second Circuit to remand Gonzalez's case for resentencing pursuant to *Crosby*. 397 F.3d at 120. The Second Circuit granted the government's motion and remanded to the district court for resentencing. Order to Remand Pursuant to *Crosby*, *Gonzalez v. United States*, No. 03-1776-cr (2d Cir. Aug. 16, 2005).

Gonzalez argues that his counsel's failure to introduce evidence of Gonzalez's post-conviction rehabilitative efforts and to argue vigorously for a downward departure based on that rehabilitation rendered counsel's assistance constitutionally ineffective. Pet.'r's Mem. in Supp. of Mot. 32-33. At the time Gonzalez was initially sentenced, prevailing law restricted district courts from considering such post-conviction rehabilitation. 18 U.S.C. § 3742(g)(2), *abrogated by United States v. Booker*, 543 U.S. 220 (2005); *see also Pepper v. United States*, No. 09-6822, 131 S. Ct. 1229, 1236 (2011) (reaffirming that *Booker* abrogated section 3742's restrictions on judicial discretion and rendered the U.S. Sentencing Guidelines advisory). After *Booker*, Gonzalez's counsel would have been able to raise the issue of post-conviction rehabilitation as a basis for a downward departure. *See Teague v. Lane*, 489 U.S. 288, 300-01 (1989) (applying new case law "retroactively" to pending criminal appeals, so long as final judgment has not been entered).

During the resentencing hearing, Gonzalez's counsel did not introduce evidence of Gonzalez's participation and performance in rehabilitative programming. When I asked why counsel had not brought evidence of Gonzalez's post-conviction rehabilitative efforts, Gonzalez's counsel replied, "I didn't make copies because I don't think that necessarily the things that he's done since he's been incarcerated are normally taken into consideration on a resentencing." Resentencing Tr. 23:2-23:5. As a result, I imposed substantially the same

sentence on Gonzalez, without consideration of his post-conviction rehabilitation.[3]  That sentence was issued in error.

Gonzalez's counsel's failure to raise the issue of post-conviction rehabilitation prejudiced the outcome of Gonzalez's resentencing, resulting in a longer sentence than the sentence required under the *Booker* regime.  Moreover, I held Gonzalez's resentencing hearing for the express purpose of evaluating his sentence in light of *Booker*.  Although Gonzalez's counsel may not have predicted that a change of law would take place during the pendency of Gonzalez's appeal, counsel was on notice to review *Booker* to determine if it applied to Gonzalez's case.  *Teague*, 489 at 301.

Gonzalez has made a showing that his trial counsel's failure to raise the issue of postsentencing rehabilitation at resentencing materially and negatively prejudiced the outcome of his resentencing.  He is entitled to a reconsideration of his sentence to determine if his post-conviction rehabilitation merited a downward departure from the recommended Guidelines range.  *United States v. Malone*, 499 F. App'x 92, 94 (2d Cir. 2012).

D.      Ineffective Assistance of Counsel on Direct Appeal

Finally, Gonzalez argues that he did not receive effective assistance of counsel on direct appeal because his counsel failed to argue that his trial counsel was constitutionally ineffective and that the drug quantities attributed to Gonzalez at sentencing were outside the scope of the facts Gonzalez admitted in his guilty plea.

---

[3] In his amended petition, Gonzalez argues that his counsel should have argued for a downward departure based on his diminished mental capacity, which he says stems from his lifelong mental illness.  Nothing in Gonzalez's comportment during proceedings indicated a history of mental illness, nor did any facts in his PSR.  Thus, I have no reason to believe that Gonzalez's lawyer had a basis to make an argument about Gonzalez's mental capacity.

First, Gonzalez's assertion that his appellate counsel failed to argue that the drug quantities I attributed to Gonzalez were inconsistent with those he admitted to in his guilty plea is contrary to fact. Gonzalez's counsel briefed those issues on appeal, and the Second Circuit concluded that "[t]he record demonstrates that the sentence imposed did not violate either the terms of the plea agreement or the defendant's reasonable expectations thereunder." *United States v. Gonzalez*, 272 F. App'x 134, 135 (2d Cir. 2008). As such, the argument is unavailing.

Second, Gonzalez's argument that his appellate counsel was constitutionally ineffective for failing to argue that trial counsel was ineffective is without merit. For all the reasons explained above, Gonzalez's counsel during the plea and sentencing stages was constitutionally adequate. As a result, Gonzalez's appellate counsel's decision not to argue that point on appeal was also reasonable. Given counsel's objectively reasonable conduct at the pre-plea, plea and sentencing stages, it is highly improbable that the Court of Appeals would have been persuaded. Furthermore, even if Gonzalez's appellate counsel had raised the ineffective assistance of counsel argument on appeal, it is not certain the Court would have decided it. The Second Circuit has established a "baseline aversion to resolving ineffectiveness claims on direct review." *United States v. Venturella*, 391 F.3d 120, 135 (2d Cir. 2004); *Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance."). Gonzalez's appellate counsel's decision was both reasonable and did not prejudice the outcome of his case.

    E.    <u>Request to Reserve Petition for Future Cases</u>

Gonzalez's last argument is not a grounds for relief but rather a request that I leave the case open so that he may raise additional claims later, in the event that future cases provide him

new arguments.  Gonzalez has not identified, nor have I found, any authority that allows me to do so.

IV.     Conclusion

For the foregoing reasons Gonzalez's petition (doc. 1) is **GRANTED IN PART AND DENIED IN PART**.  A Certificate of Appealability will not issue on the issues denied in this ruling because Gonzalez has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Gonzalez shall be resentenced.

It is so ordered.

The Clerk is directed to close the file.

Dated at Bridgeport, Connecticut, this 6th day of August 2014.

/s/

Stefan R. Underhill

United States District Judge